IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| CHARLES BROOKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12CV853–HEH |
| | ) | |
| ERIC D. WILSON, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION
(Denying 28 U.S.C. § 2241 Petition)

Charles Brooks, a federal inmate proceeding *pro se*, submitted a 28 U.S.C. § 2241 petition. (ECF No. 6.) Brooks contends that the United States Parole Commission ("Commission") erred in executing his sentence. Specifically, Brooks raises the following grounds for relief:

Claim 1   When the Commission revoked Brooks's parole in 2011, it violated Brooks's rights by failing to properly credit the 47 months Brooks served on a North Carolina sentence against Brooks's D.C. Sentence.

Claim 2   "Illegal sentence." (§ 2241 Pet. Attach. 1.) Upon revoking Brooks's Parole is 2011, the Commission required Brooks to serve 162 months prior to considering Brooks for parole. Brooks asserts, "I don't have 162 mos. sentence for the [Commission] to give me . . . ." (*Id.*)

Claim 3   The Commission utilized an "[u]nlawful regulation." (*Id.* at 2.)

Respondent has filed a Motion for Summary Judgment. (ECF No. 10.) Brooks has responded. (ECF No. 14.) For the reasons set forth below, the Court will grant the Motion for Summary Judgment.

## I. Procedural History

### A. Original Sentence and Parole

In April of 1996, the Superior Court for the District of Columbia sentenced Brooks to a 240-month term of imprisonment as an accessory after the fact to murder, plus 3 years for carrying a pistol without a license ("D.C. Sentence"). (Mem. Supp. Mot. Summ. J. Ex. A, at 1; *id.* Ex. D, at 1.) On March 28, 2003, Brooks was released on parole with a total of 5451 days remaining to be served on his sentence. (*Id.* Ex. B, at 1.)[1]

### B. 2005 Reparole

On July 6, 2005, after Brooks violated the terms of his parole, the Commission revoked Brooks's parole. (*Id.* Ex. C, at 1.) On November 1, 2005, the Commission reparoled Brooks. (*Id.*) At the time of his reparole on November 1, 2005, Brooks had 5208 days remaining to serve on his original sentence. (*Id.* Ex. A, at 2.)

### C. Florida Conviction

On September 14, 2007, Florida police arrested Brooks on the charge of aggravated assault on a law enforcement officer. (*Id.* Ex. D, at 2.) Thereafter, Brooks was convicted of aggravated assault on a law enforcement officer and sentenced to three years of imprisonment. (*Id.* Ex. F, at 3.)

---

[1] On August 5, 1998, the Parole Commission assumed jurisdiction over District of Columbia Code Offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) ("Revitalization Act"). The Revitalization Act gives the Commission exclusive jurisdiction over all District of Columbia felony prisoners. *See Franklin v. District of Columbia,* 163 F.3d 625, 632 (D.C. Cir. 1998).

2

### D. North Carolina Conviction

On November 19, 2009, in the Superior Court of Guilford County, North Carolina, Brooks was convicted of involuntary manslaughter. (*Id.* Ex. E, at 1.) The North Carolina Court sentenced Brooks to a minimum term of imprisonment of between 46 and 65 months and awarded Brooks credit against that sentence for the 765 days he had spent in confinement prior to the date of that judgment. (*Id.*) On August 9, 2011, Brooks completed service of his North Carolina Sentence. (*Id.* Ex. D, at 4.)

### E. 2011 Parole Revocation

On August 9, 2011, the Commission took Brooks into custody on a parole violation warrant. (*Id.* Ex. D, at 4.) On October 14, 2011, a hearing examiner conducted Brooks's parole revocation hearing and recommended revoking Brooks's parole. (*Id.* Ex. F, at 1–5.) During the course of that hearing, Brooks failed to express any remorse for killing the female victim of the involuntary manslaughter conviction in North Carolina.[2] (*Id.* at 5.) Additionally, while providing an explanation for the Florida conviction for aggravated assault on a law enforcement officer, Brooks admitted that he committed the separate offense of attempted armed robbery. (*Id.*) While fleeing from the attempted robbery, Brooks pointed a firearm at the police officer who attempted to apprehend him. (*Id.*)

Although the reparole guidelines, suggested that Brooks serve between 78 and 100 months before considering Brooks for reparole, the hearing examiner recommended that

---

[2] Brooks shot the victim at close range in the head. (Mem. Supp. Mot. Summ. J. Ex. F, at 5.)

Brooks "be continued until the expiration of his sentence . . . . 162 months, 62 months above what the guidelines suggest." (*Id.* at 5.)

On December 15, 2011, the Commission issued its decision to revoke Brooks's parole and require him to serve the remainder of his D.C. Sentence. (*Id.* Ex. G, at 1.) In support of its decision to require Brooks to serve more time than the guidelines suggested, the Commission stated:

> [Y]ou are a more serious risk than what the guidelines suggest. Your violation behavior entailed you shooting the victim at close range in the head, pointing a weapon at a law enforcement officer in order to avoid apprehension, and attempting to commit an armed robbery. Furthermore, you expressed no remorse regarding the death of the victim and you have a previous conviction, which also involved the death of the victim.
> Your original conviction was for Accessory After the Fact, Murder and Possession, and Carrying a Pistol without a License. Your repetitive involvement in violent criminal conduct suggests that you are a serious risk to the community and your release on supervision would compromise the safety of the community.

(*Id.* at 2.)

## II. Analysis

In this instance, it is appropriate to first address Brooks's third claim, as discussion of that claim provides the necessary background for analysis of Brooks's remaining claims.

### A. Claim 3

The reparole guidelines provide a guide as to how much time an offender should serve before considering his rerelease on parole by reference to the severity of his category of offense and the prognosis of his success on parole (salient factor score

"SFS"). *See* 28 C.F.R. § 2.20. Here, Brooks's offense category was rated as six and his SFS was rated as 3 resulting in a guideline range[3] which would require Brooks to serve 78 to 100 months prior to considering his rerelease on parole. *See* 28 C.F.R. § 2.20.

In Claim Three, Brooks complains the Commission incorrectly rated the severity of his offense conduct as Category Six under the pertinent reparole guideline. Brooks notes that "Offense 212 lists the use of a dangerous weapon as a Category Five offense, unless the assault involved a law enforcement officer, which carries a Category Six severity, and was used by the Parole Board in my case." (§ 2241 Pet. Attach. 2.) The pertinent regulations provided:

> 212 Assault
> (a) If serious bodily injury results or if 'serious bodily injury is the result intended', grade as Category Seven;
> (b) If bodily injury results or a dangerous weapon is used by any offender, grade as Category Five;
> (c) Otherwise, grade as Category Two;
> (d) Exception: (1) If the victim was known to be a "protected person" or law enforcement, judicial, or correctional official, grade conduct under (a) as Category Seven, (b) as Category [S]ix, and (c) as Category Three.

28 C.F.R. § 2.20, U.S. Parole Comm'n Offense Behavior Severity Index, ch. 2., subch. B, 212 (internal footnotes and references to additional definitions omitted). Here, Brooks utilized a firearm to assault a law enforcement officer. (Mem. Supp. Mot. Summ. J. Ex. F, at 5.) Therefore, the severity of his offense was appropriately rated Category Six. 28 C.F.R. § 2.20, U.S. Parole Comm'n Offense Behavior Severity Index, ch. 2., subch. B,

---

[3] (*See* Mem. Supp. Mot. Summ. J. Ex. F, at 4.)

5

212 (internal footnotes and references to additional definitions omitted). Claim Three will be dismissed.

### B. Claim 1

In Claim 1, Brooks contends that the Commission violated his rights when it revoked his parole in 2011 and failed to apply the forty-seven months Brooks served with the state of North Carolina when calculating the time Brooks would be required to serve under the reparole guidelines. The pertinent regulation provides that:

> A parole violator whose parole is revoked shall be given credit for all time in confinement resulting from any new offense or violation that is considered by the Commission as a basis for revocation, but solely for the limited purpose of satisfying the time ranges in the reparole guidelines at § 2.81. The computation of the prisoner's sentence, and forfeiture of time on parole pursuant to D.C. Code 24-406(c), is not affected by such guideline credit.

28 C.F.R. § 2.100(d)(2). To the extent that Brooks suggests that the foregoing provision requires the Commission to credit the time spent serving his North Carolina sentence against his D.C. Sentence, he is wrong. *See Sanders v. Deboo*, No. 3:08CV72, 2008 WL 5062179, at *3 (N.D. W. Va. Nov. 26, 2008) (citations omitted). This provision, however, does require that the Commission give Brooks credit for the 47 months he spent in North Carolina custody on a new offense when "satisfying the time ranges in the reparole guidelines" for the D.C. Sentence. *See* 28 C.F.R. § 2.100(d)(2). The Commission has applied that credit to Brooks. (Mem. Supp. Mot. Summ. J. Ex. H.) Nevertheless, as explained below, in this instance, that credit is immaterial to Brooks's eventual release.

Brooks is currently scheduled to be released prior to the Commission's meeting to reconsider Brooks for reparole. Brooks has a statutory/mandatory release date of March 6, 2021.[4] (Mem. Supp. Mot. Summ. J. Ex. F, at 1.) The Commission required Brooks to serve 162 months from August 9, 2011, prior to considering Brooks for reparole. Applying the 47-month credit for time spent in North Carolina custody to the 162-month period, Brooks would not be eligible for consideration for reparole until March 9, 2021, after his statutory release date. Because Brooks received the appropriate credit, Claim 1 lacks merit and will be dismissed.

### C. Claim 2

Upon revoking Brooks's parole, the Commission required Brooks to serve 162 months before considering him for reparole. In Claim 2, Brooks asserts, "I don't have 162 mos. sentence for the [Commission] to give me . . . ." (§ 2241 Pet. Attach. 1.) Brooks is wrong. As reflected above, at the time of his reparole on November 1, 2005, Brooks had 5208 days (over 173 months) remaining to serve on his original sentence. (Mem. Supp. Mot. Summ. J. Ex. A, at 2.) As Brooks fails to demonstrate any violation of his rights, Claim 2 lacks merit and will be dismissed.

---

[4] An inmate's statutory/mandatory release date is calculated based upon the time the inmate served in confinement minus his earned and projected good time credits. *See Williams v. U.S. Parole Com'n*, No. 1:CV-08-1776, 2009 WL 2043433, at *3 (M.D. Pa. July 8, 2009).

### III. Conclusion

The Motion for Summary Judgment (ECF No. 10) will be granted. The Motion to Dismiss (ECF No. 9) will be denied as moot. The § 2241 Petition will be denied and the action will be DISMISSED.

An appropriate Order shall issue.

                                                             /s/

Date: August 13, 2014  
Richmond, Virginia

HENRY E. HUDSON  
UNITED STATES DISTRICT JUDGE

8